# United States District Court for the Eastern District of Pennsylvania

Noni Boddie :
:
:
v. : Civil Action No.
: Jury Trial Demanded
Cardone Industries, Inc. :

## *Complaint*

Plaintiff, Noni Boddie, brings a series of claims against Defendant, Cardone Industries, Inc., of which the following is a statement:

## *Jurisdiction and Venue*

1. This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331 and 1343, this action being brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991). This Court may exercise supplemental jurisdiction over Ms. Boddie's state law claim pursuant to 28 U.S.C. §1367.

2. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(c).

## *The Parties*

3. Plaintiff, Noni Boddie, is an African-American female citizen of the United States and a resident of the State of New Jersey.

4. Defendant Cardone Industries, Inc. ("Cardone") is a privately-held provider of new and remanufactured aftermarket automobile parts and products. Defendant's headquarters is located at 5501 Whitaker Avenue, Philadelphia PA 19124, and it has facilities in California, Arizona, Texas, Mexico and Canada.

5. The acts set forth in this Complaint were authorized, ordered, condoned and/or done by defendant's officers, agents, employees and/or representatives while actively engaged in the management of defendant's business.

## *Background Facts*

6. On February 21, 2019, defendant offered Ms. Boddie the position of Director of HR Services – North America, with a start date of March 11, 2019. Defendant offered Ms. Boddie a base salary of $135,000 annually, health benefits, participation in defendant's 401(k) program, coverage under defendant's Short and Long Term Disability plans, 17 days of Paid Time Off, and all company holidays off, among other benefits. Ms. Boddie accepted defendant's offer of employment.

7. Unbeknownst to Ms. Boddie at the time, defendant misrepresented the role of the Director of HR Services – North America, knowingly withheld information that would have afforded her the opportunity to make an informed decision concerning whether to accept defendant's offer of employment, including knowingly withholding from her the deplorable health conditions in which she would be required to work.

8. Prior to being offered employment, Ms. Boddie went through an extensive interview process:

    a. On February 7, 2019, Kim Hudson, defendant's HR Manager, sent Ms. Boddie an email requesting that Ms. Boddie take an assessment related to her prospective position.

    b. On February 8, 2019, Ms. Hudson sent Ms. Boddie an email requesting that Ms. Boddie participate in a video interview.

    c. On February 15, 2019, Ms. Hudson sent Ms. Boddie an email to confirm the first round of interviews at defendant's headquarters for February 21, 2019 beginning at 8:00 a.m.

d. On February 21, 2019, Ms. Boddie was interviewed at defendant's headquarters by James Matton, a White male and defendant's Vice President, Total Rewards, Consuelo Davis, a Latinx and defendant's Director, Total Rewards, Stacie Runion, a White female and defendant's Vice President, Global Talent Management & Engagement, and Megan Bell, a White female and defendant's Manager, HR Services. At no time during the interview process did anyone disclose to Ms. Boddie the information referenced in paragraph 7.

9. As directed, Ms. Boddie reported to defendant's headquarters at 5501 Whitaker Avenue, Philadelphia, on March 11, 2019 to begin work. That day, she completed orientation and was scheduled for lunch with Ms. Runion, Ms. Bell, Mark Milliken, a White male and defendant's Training & Development Manager, and Rosalyn Collins, a Black female and defendant's Change Management Manager. Ms. Boddie spent the first half of the afternoon of March 11 with Isis Kim for on boarding. After the meeting, she was taken to Ms. Runion for a meeting, who immediately told her that she would not be able to meet for longer than 30 minutes. During that meeting, Ms. Runion showed Ms. Boddie an organization chart listing all of defendant's top management employees, virtually all White males. Ms. Runion commented, however, that defendant was "working on diversity." After lunch, Ms. Boddie was directed to a conference room to read the Collective Bargaining Agreements for the Texas and Canada facilities, neither of which had it previously been confirmed she would be supporting in her HR Director role. At the end of the day, Ms. Runion stopped by the conference room. Ms. Boddie asked her why she had been directed to read the CBAs for the Texas and Canada facilities. Ms. Runion replied that they would discuss the issue later.

10. On March 12, 2019, Ms. Boddie participated in orientation with Mr. Matton, and had lunch with Ms. Davis. Mr. Matton explained to Ms. Boddie the basis of the wildcat strike at

3

the Mexico facility after the massive layoff 2 years prior. Prior to lunch, Ms. Davis asked Ms. Boddie if she was aware that her office would be located at the facility at 5660 Rising Sun Avenue, Philadelphia. Ms. Boddie replied that she was not aware of that fact. Ms. Davis then stated she was going to take Ms. Boddie to lunch and then the Rising Sun Avenue facility so she would not have to go alone and introduce herself to her own team. During the meeting, Ms. Davis also told Ms. Boddie she recently fired the Systems Consultants because she was told she had spent too much money. However, the systems issues were not fixed and for that reason Ms. Davis could not provide Ms. Boddie with any compensation reporting because it was convoluted and inaccurate. Ms. Boddie asked Ms. Davis when she would be able to provide the data to her. Ms. Davis replied that the data issues had been "messed up for over a year".

11. After lunch on March 12, 2019, Ms. Davis took Ms. Boddie to the Risng Sun Avenue facility, introduced her to the clergy team and took Ms. Boddie to Ms. Bell's office. Ms. Boddie observed that the overwhelming majority of defendant's minority employees work at the Rising Sun Avenue facility. Ms. Boddie, Ms. Bell and Ms. Davis stayed at the Rising Sun Avenue facility until approximately 4:00 p.m., when Ms. Davis left. Ms. Boddie left shortly thereafter with Ms. Bell because Ms. Bell was leaving early and no one had a key to Ms. Boddie's office.

12. On March 13, 2019, Ms. Boddie had a series of one-on-one meetings with various company leaders. Ms. Boddie met with Bill Mercer, a White male and defendant's Sr. Director of Planning, Matt Gaffney, a White male and defendant's Sr. Director, Demand Planning, and Pat Taylor, defendant's Sr. Dir., Voorhees, Catalog. As a result of those meetings, Ms. Boddie learned the following:

a. Vendors had not been paid for 2-3 years and it was becoming increasingly difficult to hide that fact from employees;

b. Defendant was manufacturing products it would likely never use to avoid laying off employees before they were ready;

c. Ms. Davis was asked directly if she was aware of the mass lay-off that was being planned; and

d. She was told there was a hiring freeze.

13. On March 14, 2019, Ms. Boddie had a morning meeting with Ms. Runion, and in the afternoon reported to the Rising Sun Avenue facility. At the morning meeting, Ms. Runion asked Ms. Boddie if she had any questions. Ms. Boddie told her she had concerns after several discussions with other employees and needed some issues clarified.

a. Ms. Boddie asked Ms. Runion whether defendant was planning a mass lay-off and whether that was why she was hired. Ms. Runion replied that a mass lay-off was not planned and she did not need to hire Ms. Boddie to do that because she could have done it herself.

b. Ms. Boddie asked Ms. Runion whether defendant was in financial trouble. Ms. Runion replied that defendant was not in financial trouble and explained that the corporate building had recently been sold and currently was in a lease back arrangement. She further explained that defendant had purchased a building in Bala Cynwyd, but that Ms. Boddie would not be relocating there. Ms. Boddie asked who would be moving to the Bala facility. Ms. Runion replied that anyone who does not support the employees directly would go, but because Ms. Boddie did, she would remain behind at the Rising Sun Avenue facility.

c. Ms. Boddie asked Ms. Runion why she had not been told during the hiring process that her office would not be at the Whitaker Avenue headquarters, where all of the

interviews had had taken place and where the other management personnel had their offices. Ms. Runion did not answer this question.

      d.     Ms. Boddie asked Ms. Runion why her team members in Texas don't know they are reporting to her, and when she planned to tell them. Ms. Runion told Ms. Boddie her role is different from the prior HR Director, and that she would essentially have all of the HR managers reporting to her. Ms. Boddie asked about the VP in Texas and Ms. Runion stated his direct reports would report to Ms. Boddie.

      e.     Ms. Boddie asked Ms. Runion why defendant wasn't paying the vendors. Ms. Runion replied that defendant was having cash flow problems.

      f.     Ms. Boddie asked Ms. Runion what explanation was being given to the employees. Ms. Runion did not answer.

      g.     Ms. Boddie asked Ms. Runion, if the issue was just a system implementation issue why it was taking so long to resolve? Ms. Runion did not answer.

      h.     Ms. Boddie asked Ms. Runion why the success factors consultants were fired if the system still is not running properly and whether and when someone else would be hired to address the issue? Ms. Runion did not answer.

Ms. Runion "reassured" Ms. Boddie and gave her a key to her office. Ms. Boddie left and went to the Rising Sun Avenue facility.

     14.     When Ms. Boddie arrived at the Rising Sun Avenue facility, she spoke with Ms. Bell. During that discussion Ms. Boddie learned:

      a.     She could not order any pens. Rather, she was told a recent directive given was to "scrounge around" for whatever was needed;

b. Ms. Bell went to the ladies room, came back and told Ms. Boddie roaches were falling from the ceiling, and this was "normal" for the Rising Sun Avenue facility;

c. Ms. Bell asked Ms. Boddie if she was aware of the massive lay-off being planned and she assumed Ms. Boddie would be spending a great deal of time with Ms. Runion to prepare for it;

d. Ms. Bell believed her job was in danger as well;

e. Ms. Bell told Ms. Boddie about the (4) other people who reported to her – one was an intern and this was his first job; another was part time; and the other two were just waiting for their positions to be eliminated;

f. The Rising Sun Avenue facility employees had nothing to do because calipers were shipped to Mexico;

g. Ms. Bell had been offered the HR Director role, but then defendant changed it to include biweekly travel (which Ms. Boddie was not aware of) and to cover the Texas and Canada facilities;

h. The prior HR Director resigned. She had no power in defendant's corporate structure.

After the discussion, Ms. Bell apologized. She stated she had been involved in the interview process and had asked several times if Ms. Boddie had been told that her office would be at the Rising Sun Avenue facility, a boarded up, roach and mice infested building. She said she told defendant's management it was not a good idea – but she was ignored.

15. After Ms. Bell left Ms. Boddie's office, a large cockroach about twice the size of a full grown cricket appeared under Ms. Boddie's desk. Ms. Bell came over, apologized, went out to the open area and asked five employees if anyone would mind killing a "Cardone-sized

7

cockroach." A Black male employee got up and respectfully told me he would get a few paper towels and come over. He picked the cockroach up and apologized to Ms. Boddie.

16. Ms. Bell then returned to Ms. Boddie's office. Visibly embarrassed, Ms. Boddie told her, "I can't do this." Ms. Bell replied, "well there are mice too and you will see them just walking around. And across the hall there is a leak from the ceiling where there is a huge puddle on a desk where an employee works and it smells like feces." Ms. Boddie asked Ms. Bell if there were any Clorox wipes so she could wipe down the office. Ms. Bell replied, "no, we have to buy our own." Ms. Bell also told Ms. Boddie the Rising Sun Avenue building had been boarded up for quite some time and that construction had been halted for over a year. Ms. Bell had a blue print for the construction, but no timeline. Ms. Bell encouraged Ms. Boddie to call Ms. Runion and have a candid discussion – "no one should have to endure what you are going through."

17. Following Ms. Bell's suggestion, Ms. Boddie sent a text to Ms. Runion. She called Ms. Boddie in a few minutes and Ms. Boddie put her on speakerphone. Ms. Boddie told her she had an issue with the roach in her office and that she also understood the building to be infested with mice as well. Ms. Runion paused and said " welcome to rising sun, you should call the Sr. Director of facilities," paused and then said she had to go. Ms. Bell, who was still in Ms. Boddie's office, apologized.

18. Before leaving her office that day, another employee, Justin, shared with Ms. Boddie that prior to working at the Rising Sun Avenue facility he never took medications, but that he takes allergy medication just to work at the Rising Sun Avenue facility. On the ride home, Ms. Boddie experienced a horrible after taste in her mouth.

8

19. That night, Ms. Boddie was unable to sleep. She was convinced she could not continue to work at the Rising Sun Avenue facility. She is fearful of animals, rodents and bugs. Ms. Boddie is the sole income earner in her home because her husband is the sole caretaker for her father and she has three children. At 4:30 am, she drafted a text regarding her experiences, which she sent at 7:43 am to Ms. Runion requesting a meeting. Ms. Boddie was hopeful she would be allowed to relocate her office to the Whitaker Avenue headquarters.

20. On March 15, 2019, Ms. Boddie and Ms. Runion met in response to the text. Ms. Boddie told Ms. Runion she needed to have a very candid, heart-to-heart discussion with her. She told Ms. Runion it was unacceptable for anyone to be expected to work in the present conditions at the Rising Sun Avenue facility and that she was hurt by Ms. Runion's response to her call on March 14. Ms. Boddie asked about the construction timeline – Ms. Runion did not answer. Ms. Boddie told her about the aftertaste, the unhealthy air, and other deplorable conditions at the Rising Sun Avenue facility. Ms. Boddie also asked why her office could not be relocated to the Whitaker Avenue corporate headquarters until and while the construction was underway. Ms. Runion immediately said "no." Ms. Boddie told Ms. Runion she misrepresented the Director of HR role, that she had multiple opportunities to disclose Ms. Boddie's work location, that she removed Ms. Boddie's ability to make her own choice about employment, and that Ms. Boddie had turned down a position with another company to work at defendant. In response, Ms. Runion clenched her hands and said, "well obviously this is not the place for you because you need too much." Appalled, Ms. Boddie asked what she meant by that statement. Ms. Runion replied, because Ms. Boddie had asked if defendant had a smaller laptop and for WiFi at the Rising Sun Avenue facility since defendant did not offer company phone devices.

9

Ms. Boddie felt insulted. Ms. Runion further stated people who come from "the outside" can't survive at Cardone.

21. Ms. Boddie told Ms. Runion she lied and that was all there was too it. Ms. Runion clenched her fists until her knuckles turned white and said " you are right" and "I am sorry." She told Ms. Boddie to figure out an option, but the option had to include her office remaining at the Rising Sun Avenue facility because the prior Director of HR did. Ms. Boddie replied that the conditions at the Rising Sun Avenue facility are terrible and the prior Director of HR did not have the level of responsibility she would have, which would require that she be present where decisions were being made. Ms. Runion concluded the meeting by reiterating to Ms. Boddie that she should think about an option.

22. Later that afternoon, Ms. Runion came into the Rising Sun Avenue facility for a previously-scheduled meeting. Ms. Runion began to cough uncontrollably to the point that she had to step out of the room. Ms. Runion returned to the meeting, and afterwards told Ms. Boddie that the cleaning team was coming at 2:30 p.m. to clean, and that the Sr. Director of Facilities would disinfect Ms. Boddie's office again. Ms. Boddie inquired about everyone else and the ladies room. Ms. Runion did not reply to the question, but said Ms. Boddie could leave early if she desired to.

23. Prior to leaving the Rising Sun Avenue facility, Ms. Boddie met with the Chaplain. He was very candid. He told Ms. Boddie he had been with defendant for 32 years and this was the worst ever. He said he was very surprised that she had figured out everything in just 3 days, and told Ms. Boddie he would see her the following Monday. Ms. Boddie left the building and did not return the following week.

24. On March 18, 2019, Ms. Boddie sent an email to Ms. Runion explaining why she would not be returning to work at defendant. Attached hereto as Exhibit A and made a part hereof is a true and correct copy of the email dated March 18, 2019 from Noni Boddie to Stacie Runion.

25. The deplorable conditions at defendant's Rising Sun Avenue facility had and continue to have a severe negative impact on Ms. Boddie's emotional, physical and psychological well-being. As a direct and proximate result of defendant's actions and omissions, Ms. Boddie suffered and continues to suffer sleep disturbances (including sleepness and insomnia), fear of the dark, anxiety, agitation, restlessness, vivid and bizarre dreams and nightmares, fatigue, exhaustion, impaired concentration and acid reflux.

26. Defendant allowed conditions to exist at the Rising Sun Avenue facility that were so unpleasant and difficult that a reasonable employee in Ms. Boddie's position would have felt compelled to resign her employment.

27. The deplorable conditions defendant allowed to exist, negligently and/or intentionally, and refused to correct despite being on notice of the same, at the Rising Sun Avenue facility presented a risk of serious adverse health consequences to Ms. Boddie and others, and in fact caused adverse mental health consequences for Ms. Boddie.

28. Defendant constructively discharged Ms. Boddie and was unreasonably unwilling to accommodate her concerns regarding her work environment because of her race.

29. Ms. Boddie has suffered, is now suffering and will continue to suffer emotional distress, mental anguish, loss of enjoyment of life and other non-pecuniary losses as a direct and proximate result of her constructive discharge and defendant's discrimination.

30. Defendant constructively discharged Ms. Boddie and discriminated against her because of her race.

31. By reason of defendant's constructive discharge and discrimination, Ms. Boddie suffered extreme harm, including loss of income and other employment benefits, loss of professional opportunities, embarrassment and humiliation.

32. Defendant acted and failed to act willfully, maliciously, intentionally and with reckless disregard for Ms. Boddie's rights.

### *Count I*

#### *The Civil Rights Act of 1866, 42 U.S.C. §1981*

33. Plaintiff restates and realleges paragraphs 1-32, inclusive, as though set forth here in full.

34. Ms. Boddie had a federal statutory right under the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), as amended, to be accorded the same rights as were enjoyed by White employees with respect to the terms and conditions of their employment relationship with defendant and to the enjoyment of all benefits, privileges, terms and conditions of that relationship.

35. Defendant's constructive discharge of Ms. Boddie occurred pursuant to its pattern and practice of exhibiting extreme disdain for the health and safety of defendant's non-White employees.

36. Defendant's conduct, described above and as follows, was motivated solely by Ms. Boddie's race and resulted in her constructive discharge:

a. defendant intentionally withheld from Ms. Boddie until she had accepted the position of Director of HR Services – North America, and had begun working that her office

would be located at the Rising Sun Avenue facility, a facility with deplorable health conditions, where defendant intentionally placed its non-White employees;

    b.    following a classic bait-and-switch scheme, defendant intentionally scheduled Ms. Boddie's pre-hiring and immediate post-hiring activities at its Whitaker Avenue facility, all the while intending to locate her office at the Rising Sun Avenue facility, where it maintained deplorable health conditions and relegated non-White employees to work under those conditions, with intentional and reckless disregard for their health and safety, and intentionally withheld from Ms. Boddie the fact that her office would be located at the Rising Sun Avenue facility;

    c.    when Ms. Boddie was informed that her office would be located at the Rising Sun Avenue facility, without any legitimate, non-discriminatory reason to do so, defendant rejected her request that her office be located at the Whitaker Avenue facility, where defendant intentionally placed its non-Black management officials because the health and safety conditions there were good;

    d.    despite its knowledge of the deplorable health conditions at the Rising Sun Avenue facility, and because it relegated its non-White employees to work there, including Ms. Boddie, solely because of their race defendant refused to ensure that the Rising Sun Avenue facility met basic standards of health and safety, because it believed that its non-White employees, including Ms. Boddie, were tolerant of and accustomed to living under such conditions;

    e.    defendant's management ignored the statements of its own employee who told them that locating Ms. Boddie's office at the Rising Sun Avenue facility was not a good idea;

    f.    defendant had no legitimate, non-discriminatory reason for locating Ms. Boddie's office at the Rising Sun Avenue facility; and

g.	defendant had no legitimate, non-discriminatory reason for rejecting Ms. Boddie's request that her office be located at the Whitaker Avenue facility.

37.	Defendant's conduct described above deprived Ms. Boddie of the rights, privileges and immunities guaranteed to her under Section 1981.

38.	By reason of defendant's conduct, Ms. Boddie is entitled to all legal and equitable relief available under Section 1981.

### *Count II*

#### *Negligent Infliction of Emotional Distress*

39.	Plaintiff restates and realleges paragraphs 1-38, inclusive, as though set forth here in full.

40.	Defendant owed Ms. Boddie a duty to provide a safe and healthy work environment at the Rising Sun Avenue facility.

41.	Defendant, through its actions and omissions, breached said duty.

42.	As a direct and proximate result of defendant's breach of duty, Ms. Boddie suffered the damages and injuries alleged above.

43.	Ms. Boddie's injuries resulted from a direct physical and emotional impact caused by experiencing the deplorable conditions defendant created and allowed to exist at the Rising Sun Avenue facility.

44.	By reason of the above, defendant negligently inflicted emotional distress upon Ms. Boddie, and Ms. Boddie is entitled to all legal and equitable relief arising therefrom.

### *Jury Demand*

45.	Ms. Boddie hereby demands a trial by jury as to all issues so triable.

## *Prayer for Relief*

Wherefore, Plaintiff, Noni Boddie, respectfully prays that the Court:

a. adjudge, decree and declare that defendant has engaged in illegal race discrimination, and that the actions and practices of defendant complained of herein are violative of her rights under Section 1981 and Pennsylvania common law;

b. enter judgment in favor of Ms. Boddie and against defendant for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, past and future mental anguish and pain and suffering, in amounts to be determined at trial;

c. order defendant to pay the attorney's fees, costs, expenses and expert witness fees of Ms. Boddie associated with this case;

d. grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just and equitable; and

e. retain jurisdiction until such time as the Court is satisfied that defendant has remedied the unlawful and illegal practices complained of herein and is determined to be in fu compliance with the law.

_____
Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia PA 19110
215 557 9550 tel / 215 278 7992 fax
rvance@vancelf.com

*Attorney for Noni Boddie*