IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NONI BODDIE, | : | |
|         Plaintiff, | : | CIVIL ACTION |
| | : | No. 20-2179 |
| v. | : | |
| | : | |
| CARDONE INDUSTRIES, INC. | : | |
|         Defendant. | : | |
| | : | |
| | : | |
| | : | |

McHUGH, J.                                                                                                                                                 September 8. 2020

**MEMORANDUM**

       This is an employment discrimination case in which Plaintiff Noni Boddie raises a claim of intentional race discrimination under 42 U.S.C. § 1981 and a claim of negligent infliction of emotional distress (NIED), both arising from her brief period of employment with Cardone Industries, Inc. If the facts are as Ms. Boddie alleges, Cardone's hiring practices were unprofessional. But Plaintiff's claim that she was the victim of racial discrimination is dependent upon a single allegation that cannot support the broad inference Plaintiff seeks. Accordingly, for the reasons that follow, Boddie's Complaint will be dismissed.

**I.      Relevant Background**

      **A. The Pleaded Facts**

       Plaintiff's Complaint sets forth a myriad of details. In early February 2019, after seeking a position of employment, Noni Boddie entered an extensive interview process with Cardone for the role of Director of Human Resources Services–North America. (Compl. ¶ 8, ECF 1.) During that process, Boddie sat for both video and in-person interviews, including with senior members of the organization. (*Id.*) On February 21, 2019, Boddie received an offer of employment from

Cardone, which included compensation of $135,000 per year as well as paid time off and a slate of health, retirement, and disability benefits.  (*Id*. ¶ 6.)  Boddie accepted Cardone's offer.  (*Id*.)

On March 11, 2019, Boddie reported for her first day of work to Cardone's headquarters at 5501 Whitaker Avenue in the northeast section of Philadelphia.  (*Id*. ¶ 9.)  That first day included various orientation sessions and onboarding activities.  (*Id*.)  Boddie also had lunch with several people in management, including Stacie Runion—a white woman—who served as Cardone's Vice President, Global Talent Management & Engagement; Mark Milliken—a white man—who was Cardone's Training & Development Manager; Megan Bell—a white woman—who served as Cardone's Human Resources Manager; and Rosalyn Collins—a black woman—who was Cardone's Change Management Manager.  (*Id*.)

Boddie then met briefly with Runion alone and viewed an organizational chart that set forth the names and titles of Cardone's upper management.  (*Id*.)  Boddie alleges she remarked that the people in the chart were "virtually all White males," to which Runion replied that Cardone was "working on diversity."  (*Id*.)

Boddie reported to Cardone's headquarters again the next day for additional orientation activities.  (*Id*. ¶ 10.)  Boddie alleges that during the orientation, she was told for the first time that she would report to Cardone's Rising Sun Avenue facility.[1]  (*Id*.)  Consuelo Davis, whom the Complaint identifies as a Latina woman, (*id*.¶ 8(d)), notified Boddie of her assignment to Rising Sun and later took Boddie there to introduce her to the employees who worked at the facility.  (*Id*.)  Boddie alleges she noticed immediately upon arriving that "the overwhelming majority of [Cardone's] minority employees work at the Rising Sun facility."  (*Id*. ¶ 11.)

---

[1] For ease of reference, the opinion will hereafter refer to the two Cardone facilities as Rising Sun and Whitaker Avenue.

Ms. Boddie alleges that the following day, March 13, 2019, she attended a series of meetings with individual members of company leadership, during which she learned that Cardone was in worse shape than she was led to believe. (*Id.* ¶ 12.) Specifically, Boddie alleges she was told that vendors had not been paid for two to three years, a hiring freeze was in place, the company was trying to avert layoffs by manufacturing products it would likely never sell, and a mass layoff was still planned. (*Id.*)

The next morning, on March 14, 2019, Boddie alleges she met with Stacy Runion at Whitaker Avenue, and Runion sought to allay Boddie's fears by telling her that the company was not experiencing financial difficulties; it had recently sold the corporate building and purchased another in Bala Cynwyd, Pennsylvania; and no mass-layoff was planned. (*Id.* ¶ 13.) Boddie alleges she asked Runion about the option of moving to Bala Cynwyd with the rest of the management team, and Runion responded that the move would not happen because Boddie's responsibilities to support the employees at Rising Sun required her to remain at that location. (*Id.*) Later that day, Boddie reported to Rising Sun and met with Megan Bell. (*Id.* ¶¶ 8, 14.)

According to the Complaint, Boddie received several pieces of ominous information when she arrived: supplies were hard to come by; the facility was infested with cockroaches that fell from the ceiling of the ladies' room; a significant layoff was in the works; Bell believed her own job was in jeopardy; changes in manufacturing strategy left many employees with little to do; the previous HR director resigned and had no real power at Cardone; and Bell herself had been offered the position, but declined because the position was changed to include biweekly travel to Texas and Canada. (*Id.*¶ 14.) Boddie further alleges Bell told her she unsuccessfully lobbied management to place Boddie elsewhere because Rising Sun was a "boarded up, roach and mice infested building." (*Id.*)

Boddie next alleges that after Bell left her office, "a large cockroach about twice the size of a full-grown cricket" appeared under her desk, which Bell later described as a "Cardone-sized cockroach" and whose presence Bell apologized for. (*Id*. ¶ 15.) Boddie also alleges that Bell told her mice were a constant presence in the building and that a ceiling leak across the hall left "a huge puddle on a desk where an employee works and it smells like feces." (*Id*. ¶ 16.) Bell also allegedly encouraged Boddie to contact Runion about the conditions. (*Id*.) Boddie alleges that she informed Runion of the cockroach in her office and issues with mice, to which Runion responded, "welcome to Rising Sun" and suggested she "call the [Senior] Director of Facilities." (*Id*. ¶ 17.) Boddie alleges that later in the day, another employee confided to her that he required allergy medications to work at Rising Sun, having never needed them before. (*Id*. ¶ 18.)

Ms. Boddie avers that exposure to the conditions at Rising Sun affected her that evening and through the night. Boddie alleges that she had a "horrible taste in her mouth" on the trip home from Rising Sun. (*Id*.) In addition, Boddie alleges she could not sleep that night due to her fear of the various pests that infested the building. (*Id*.) According to Boddie, the basis of her fear is that she is her home's sole breadwinner because her husband cares for her father and three children. (*Id*. ¶ 19.) Boddie alleges these fears prompted her to send a text message to Runion in the early morning hours of Friday, March 15, 2019, demanding a meeting to address her concerns. (*Id*.)

During the meeting that ensued, Boddie alleges she told Runion the conditions at Rising Sun were unacceptable and asked to be relocated to Whitaker Avenue while planned renovations were completed, a request Runion allegedly denied. (*Id*. ¶ 20.) Boddie alleges she then accused Runion of misrepresenting the facts and circumstances surrounding the job, which was especially troubling because she had turned down another offer to accept the one from Cardone. (*Id*.)

4

Boddie alleges she pressed even further and accused Runion of lying, to which Runion ostensibly responded "you are right . . . I am sorry." (*Id*.)  Nevertheless, Runion allegedly told Boddie she would have "to figure out an option, but the option had to include her office remaining at the Rising Sun Avenue facility because the prior Director of HR" was stationed there.  (*Id*. ¶ 21.)

Boddie alleges that later the same afternoon, Runion returned to Rising Sun "for a previously-scheduled meeting," during which "Runion began to cough uncontrollably to the point that she had to step out of the room."  (*Id*. ¶ 22.)  Runion allegedly returned to the room and told Boddie that a team would arrive at 2:30 p.m. to clean, and further informed her the Director of Facilities would once again disinfect Boddie's office.  (*Id*.)  Boddie alleges she inquired whether the cleaning would include other offices and the ladies' room.  (*Id*.)  Although Runion allegedly did not respond to the question, she gave Boddie permission to leave early.  (*Id*.)  The following Monday, just six days after beginning her tenure at Cardone, Boddie sent an email to Runion to inform her she would not return.  (*Id*. ¶ 24.)

### B. Procedural History

This case has an unusual procedural history in that Plaintiff has filed two separate actions.  Boddie initially filed a complaint on September 24, 2019, which was captioned *Boddie v. Cardone Industries, Inc.*, E.D. Pa., Civ. No. 19-4435, and assigned to me.  Boddie's complaint asserted three counts:  violation of 42 U.S.C. § 1981 (Count I), negligent infliction of emotional distress (Count II), and intentional infliction of emotional distress (Count III).  (ECF 1, No. 19-4435.)  Cardone moved to dismiss that complaint on November 20, 2019, and Boddie responded. After reviewing the parties' submissions, I entered an Order dated January 17, 2020, dismissing Counts I and II of Boddie's complaint without prejudice and dismissing Count III with prejudice. (ECF 11, No. 19-4435.)

Plaintiff did not attempt to amend the complaint in that action.  Instead, on May 6, 2020, Boddie filed the Complaint now before the Court.  (ECF 1.)  As in the prior action, Boddie asserts claims of discrimination under 42 U.S.C. § 1981 (Count I) and negligent infliction of emotional distress (Count II).  (*Id*.)  Cardone now moves to strike the Complaint under Federal Rule of Civil Procedure 12(f), arguing that it was improperly filed because in practical terms it represents an amendment of her previously filed complaint, for which she did not receive leave of court.  Alternatively, it moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  (ECF 6.)  Boddie has opposed Cardone's Motion, (ECF 9), and Cardone has replied. (ECF 10.)

## II.     Controlling Standards

As to Cardon's motion to strike, courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). A court must decide a motion to strike solely on the basis of the pleadings, and it should not grant the motion "unless the relevant insufficiency is 'clearly apparent.'"  *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 408 (E.D. Pa. 2016) (quoting *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007)).  Even so, "motions to strike generally are disfavored" and "striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly."  *Id*. (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007)).

As to Cardone's motion to dismiss under Rule 12(b)(6), it is governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

**III.     Discussion**

   A. **Rule 12(f) analysis**

Cardone contends Boddie's Complaint should be struck under Rule 12(f) because for all practical purposes Boddie has amended her original complaint but failed to follow the requirements for doing so set forth in FRCP 15.  That is so, Cardone contends, because the Complaint re-alleges the same claims previously dismissed under this Court's Order dated January 21, 2020, in the first action.  As Cardone sees it, the current pleading is an "amended" complaint and could only have been filed with Cardone's consent or leave of Court—neither of which Boddie obtained.

Boddie accepts Defendant's characterization of her Complaint in this action as an amended pleading, but contends that Rule 15 would preclude its filing only if it were untimely, and it was not untimely because the Court did not specify a date by which it should be filed.  Even if the pleading *were* untimely, Boddie asserts the Court should grant leave because the delay, if any, was minimal and therefore not prejudicial to Cardone, and the current pandemic weighs in favor of granting leeway for filing deadlines.

I am not convinced either party has properly framed the procedural issue here.  Despite repeatedly referring to the current pleading as an "Amended Complaint," Cardone acknowledges that Boddie has filed "an entirely new lawsuit arising out of Boddie's same period of employment with Cardone" as in the previous action.  (Def. Mot. at 3, ECF 6-1.)  Admittedly, because the first was not dismissed with prejudice, Boddie could have filed an amended complaint under that caption.  But she did not, and in technical terms the complaint here has not been amended.  Thus, I conclude Boddie's current pleading is not an "amended" complaint.

The more pertinent question is whether it is barred by the doctrine of claim preclusion, because Boddie has raised the same claims in another action.  I conclude that it is not.  The Court

7

of Appeals has stressed that "[c]laim preclusion bars suit when three elements are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (cleaned up). Claim preclusion "bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). Here, the first element demands closer attention because the claims for violation of § 1981 and NIED in the first complaint were dismissed without prejudice, while the claim for IIED was dismissed *with* prejudice. To that end, the Court of Appeals recently has explained that "[a] dismissal with prejudice operates as an adjudication on the merits" and "ordinarily precludes future claims," while a "dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits and thus does not have a claim-preclusive effect." *Papera v. Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) (cleaned up).

The claims now before me were dismissed without prejudice in the first action, meaning they were not decided on the merits and are not barred by the doctrine of claim preclusion. One could argue in highly technical terms that because Boddie *could* have amended the complaint in the first action, she cannot proceed here. But that would elevate form over substance, as there is no question that the earlier dismissal without prejudice allowed Ms. Boddie the chance to salvage her case with better pleading. In that regard, Cardone's reply brief acknowledges that it "does not contest that Boddie's claims are within the statute of limitations." (Reply Br. at 2, ECF 10.) In dismissing her claims without prejudice the Court was implicitly granting leave to amend. If Plaintiff had deemed it necessary formally to move for leave to amend in the first action such a motion would have been granted. I will therefore consider the merits.

### B. Rule 12(b)(6) analysis

#### 1. Section 1981 Claim

Distilled to its essence, Boddie's § 1981 claim has two components: (1) Cardone forced its non-white employees to work under deplorable conditions at Rising Sun while its white employees enjoyed relative comfort and safety at Whitaker Avenue; and (2) after luring her into the position under false pretenses, Cardone placed her at Rising Sun and refused to let her work elsewhere because she is black, which resulted in her constructive discharge when she resigned her position.

In response, Cardone asserts that Boddie fails to allege facts that demonstrate an intent on its part to discriminate against her, and it further asserts that even if those facts existed, Boddie does not adequately allege a constructive discharge. I agree.

A plaintiff raising a claim of discrimination under § 1981 must allege facts showing "(1) that [she] belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569 (3d Cir. 2002) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001)). In the context of employment discrimination claims, the Third Circuit has explained "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).

As a general matter, Boddie's Complaint proceeds almost entirely by inference. In essence, she contends that because Whitaker Avenue is a comfortable office environment populated almost exclusively by white employees and the converse is true of Rising Sun, those facts compel the inference of Cardone's racial animus as to its non-white employees generally,

and to her in particular. But the Complaint fails to plead specific facts linking her observations to an intent on Cardone's part to achieve a discriminatory distribution of its work force.

Even if Plaintiff's empirical observation gave rise to some concern, other specific facts undercut the inference Ms. Boddie seeks to draw. To begin with, Cardone hired her as an African American woman at a substantial six-figure salary with significant fringe benefits, a baseline reality that weighs against the suggestion it harbored a racial animus. Boddie concedes that the previous HR director also worked at Rising Sun, which undercuts the idea that Cardone placed her there on account of her race. Although the staff at Rising Sun is predominantly non-white, Boddie pleads that Megan Bell, a white woman, also worked at the facility. Although the majority of employees at Whittaker were apparently white, the Complaint affirmatively pleads that two employees of color with managerial authority worked from corporate headquarters. And other than the distribution of employees, Boddie points to no other statements or actions from her superiors giving rise to the inference she was placed at Rising Sun because of her race, nor does she allege any facts suggesting that Cardone had a deliberate plan to segraget its work force.

Had if I granted Plaintiff the benefit of the doubt on the plausibility of racial animus on Cardone's part, her claim would nonetheless fail because the circumstances under which she resigned do not rise to the level of a constructive discharge. To sustain a claim of constructive discharge, a plaintiff must plead facts to support an allegation that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). Determining whether a plaintiff faced intolerable conditions sufficient for a constructive discharge requires an assessment using "the objective standard of whether a 'reasonable person'

in the employee's position would have felt compelled to resign,'—that is, whether he would have had no choice but to resign." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998).

Although an employee in Boddie's position may well have expected better working conditions, the specific facts alleged in the Complaint do not point to conditions leaving her no choice but to resign, especially as quickly as she did. During the March 15, 2019, conversation Boddie had with Runion to discuss her concerns about workplace conditions, Runion informed Boddie that a cleaning crew was coming later that day to disinfect the premises and cleaners would pay special attention to her office. In fact, Runion allowed Boddie to go home early that afternoon so the cleaners could work unencumbered by her presence and mitigate the conditions Boddie found objectionable. Rather than giving Cardone the weekend to rectify those conditions, and without assessing the adequacy of the steps taken - Boddie quit her position via text message on the following Monday—a mere six days after she reported to work. Further undermining the assertion that any reasonable employee would have resigned is the absence of allegations in the Complaint that any other employees felt as strong a need to leave Rising Sun despite having been there for significantly longer periods of time.

If the Complaint is accurate in its description, there is nothing to admire about the conditions under which employees at the Rising Sun location were expected to work. But given Plaintiff's brief tenure and her resigning even before Cardone had even completed its efforts to address her concerns, the facts pleaded cannot be said to rise to the level of constructive discharge.

### 2. *Negligent Infliction of Emotional Distress*

Boddie further alleges that the conditions at Rising Sun also support her claim for negligent infliction of emotional distress. More specifically, Boddie alleges that Cardone had a

11

duty to provide a safe and healthy work environment, it breached that duty by placing her in deplorable conditions, and that breach caused her "to suffer sleep disturbances (including sleepness and insomnia), fear of the dark, anxiety, agitation, restlessness, vivid and bizarre dreams and nightmares, fatigue, exhaustion, impaired concentration and acid reflux." (Compl. ¶ 25.)

Cardone points to my previous decision in *Bernstein v. Serv. Corp. Int'l*, 2018 WL 6413316, at *5 (E.D. Pa. Dec. 6, 2018), in support of its contention that Boddie's claim fails as a matter of law because the Complaint does not allege sufficient physical harm as the result of Cardone's purported negligence. But *Bernstein* does not offer the support Cardone's claim requires. In *Bernstein*, I examined several Pennsylvania appellate decisions to determine the spectrum of allegations those courts have found both sufficient and insufficient to state a claim. Here, Boddie avers that in addition to her purely psychological symptoms, she also suffered "sleep disturbances . . . fatigue, exhaustion, impaired concentration and acid reflux." (Compl. ¶ 25.) I conclude Boddie's averments mirror the kind Pennsylvania courts have found to support a claim by alleging an array of primarily psychological symptoms accompanied by "physical manifestations of [the plaintiff's] emotional suffering."[2] *Bernstein*, 2018 WL 6413316, at *5. Notably, while Pennsylvania courts require that *some* degree of physical manifestations be present, they have not quantified those manifestations, nor have they articulated a bright line rule about which types support a claim and which do not. At this stage, I find the allegations sufficient.

---

[2] In Bernstein, I looked to three decisions of Pennsylvania courts that found the plaintiff sufficiently supported claims of emotional distress with the necessary allegations of physical harm: *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 200 (Pa. Super. Ct. 2008), aff'd, 36 A.3d 83 (Pa. 2011) (nausea and headaches); *Armstrong v. Paoli Mem'l Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993) (loss of continence); *Love v. Cramer*, 606 A.2d 1175, 1179, 1179 n.5 (Pa. Super. Ct. 1992) ("ongoing mental, physical and emotional harm").

12

Rather, the fatal flaw of Boddie's Complaint lies in its failure to plead that Cardone owed her a legally cognizable duty to provide a safe and clean workplace. Pennsylvania law recognizes claims of negligent infliction of emotional distress only in four specific factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011). Boddie's Complaint fails to articulate facts that fit any of the four *Toney* scenarios.

Sensing this inherent weakness, Boddie attempts to shoehorn her claim into the first scenario, claiming that Cardone "breached the fiduciary duty it owed to her to provide a safe and healthy work environment at the Rising Sun Avenue facility." (Pl.'s Opp. at 2, ECF 9-7.) I disagree.

In affirming *Toney*, a plurality of the Pennsylvania Supreme Court explained that a fiduciary duty supports an NIED claim when the parties have a special relationship that "encompass[es] an implied duty to care for the plaintiff's emotional well-being" and where "[t]he potential emotional harm [is not] the type that a reasonable person is expected to bear." 36 A.3d 83, 95 (noting the paradigmatic example of such a relationship is the one between doctor and patient.) *Toney* makes clear that Pennsylvania courts must take care not to define special relationships too broadly.

No Pennsylvania decision has recognized the employer-employee relationship as one that constitutes such a special relationship. To the contrary, the Pennsylvania Superior Court specifically declined to impose a duty on the part of employers to protect employees from

13

emotional distress.  *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999).  This is not surprising, because recognizing such a common law duty would give rise to an extraordinarily broad range of potential liability on the part of employers.

### IV.     Conclusion

For the reasons set forth above, Cardone's Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) will be denied. Its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted, this time with prejudice.  Plaintiff has been given the opportunity to amend, and having set forth the facts in great detail, does not plead a case that can be salvaged by further amendment.  An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge